This is case number 4-14-0389 Henry, the marriage of John Thomas Jackson and Rachel May Jackson. For the appellant we have attorney William McNutt. And for the appellate we have attorney Foreman. And Mr. McNutt are you ready to proceed? I am. Okay, you may do so. May it please the court, our position in this case is fairly simple. We believe that the case is controlled by N. Ray, the marriage of Teresa Margaret Barr. The fourth district appellate court decided that case in 2003, authored by Justice Turner. There are two salient points in that decision. The first being that the petitioner does not have to satisfy each and every factor as listed in the Eckert Supreme Court case. And a recognition that what benefits the custodial parent also enhances the quality of life of the children. The second point in part is that just because the non-custodial parent has a continuing relationship with the children, the court may not grant a veto to the non-custodial parent whenever they oppose the move. The facts in this case, your honors, clearly showed that this move was in the best interest of Rachel. The family income was going to be increased by 38%. She was going back to her hometown where she had grown up, where her relatives were, where her mother was located. And also where she went to grade school and high school. So she was returning to her hometown. That was in her best interest. It would enhance, therefore, the quality of life of these four children. And by taking this job, this family was going to receive four times more money than the father was paying in child support. And that brings me to this point. The factors that the trial judge looked at in this case against the move were largely issues that were totally within the control of the father. He chose to be employed merely as a crew member in a McDonald's restaurant in Clinton. He wasn't a supervisor. He wasn't a manager. He was just a crew member making essentially minimum wage. He claimed to have no car, yet he did have unlimited use of his aunt's car, who he considered to be his mother. He owned no real estate in Clinton. If he did not like this move, he was totally mobile. He could just move with them to Pennsylvania and take another job at McDonald's as a crew member. Was his aunt employed? Was the aunt employed? Yes. Yes, she was. So did she use her car to go to work? That wasn't clear from the record. What was clear was, and I have the testimony outlined in the brief, he was asked under Cross if he could use the car anytime he wanted to, and he said yes. So we believe that the court failed to recognize that whenever there's a petition to leave the state, that change is inevitable. We live in a mobile society. There is an adjustment time, but the adjustment can be alleviated if the court would have looked at the factors and then considered a reasonable visitation period during the summertime, a lengthy visitation period during the summertime, to offset the adjustment that has to be made when a petitioner has to leave the state. Always, any petition to leave the state is going to affect the family that way. There should then be an adjustment recognizing what's in the best interest of the children and the custodial parent. Therefore, we ask that the case be reversed and remanded to the trial judge to set a reasonable, to allow the move and then to set a reasonable visitation to the father. Thank you. Thank you, counsel. Mr. Foreman. Thank you. Good afternoon, justices. May it please the court, counsel. The Epelon's attack is two-pronged. One, what might be considered the best interest of Rachel, and two, somehow my client has not held up his end of the bargain, and therefore Rachel and his children should be allowed to leave the state. The brief spent a lot of time talking about Mr. Jackson and the fact that Mr. Jackson does not do this, Mr. Jackson does not do that, Mr. Jackson does not have a car, Mr. Jackson works at McDonald's. I'm not arguing that's not true. That's not the focus here. That's not the focus of the fourth district. The focus here is what is in the best interest of the minor children. Not what's in the best interest of Rachel Barrett, but what's in the best interest of the minor children. As I indicated in my brief, as I set forth, and I've not heard this language used, and I apologize if I use it inappropriately, but I think the trial court in cases like this examines the totality of the circumstances, well knowing that the accurate factors have to be looked at, but as your honors know, not any one factor is the heavy factor, is the primary factor. You've got to do, the trial court does a weighing test, and I think that's what Judge Finson did. He kind of came down on each different factor, and I think though he emphasized that a reasonable visitation schedule could not be set up, I think what Judge Finson realized was that this young lady who indicated that she would have a plan for leaving once the court gave her permission, and if you read her testimony, it comes across that she and her husband were woefully unprepared. They didn't know what would be required to move to that city. Now that has to be, knowledge of that sort certainly goes to the best interest of the minor children. Where are you going to be living? How much are you going to be paying in rent? What's your monthly income going to be? What are the groceries? What's the price of gas, which is the only thing she knew? She indicated that her mother would be babysitting, but her mother was a full-time secretary, so her mother was not able to do that. She indicated her mother would be providing financial wherewithal for them, but there is no testimony as to how much her mother earned, and she testified her mother was a secretary. I don't know, maybe she's a secretary at a major corporation, makes a good living, I don't know. I simply am suggesting that perhaps working as a secretary, full-time as a secretary, it would be difficult for her to take on a mother, a husband with a new job, and two children. And I think that's what Judge Finson was saying, was that wait a minute, looking at all these factors, deciding, you know, putting the evidence on this one, the evidence on that one, you folks are simply woefully unprepared to make this move. You haven't convinced me that this is in the best interest of the minor children. And then you do have the relationship between Mr. Jackson and his children, which is a very, very, very close one. I don't feel, being in this case for the past couple of years, that that's something that a summer schedule of visitation could replace, the closeness that he has with his children. The argument is that he has a car. Well, the car he drives is that of his mother, Dot, who he calls his mother. He's raised by his aunt. But the problem is, although he is free to use that car on weekends to go pick up the children, he is not free to use that car for summer trips and so on and so forth, other than a weekend, because it's her car. So him saying, suggesting to this court that he would have free reign of the automobile, I think is wrong, because then his aunt is left without a car. And so it's just simply apparent that Mr. Jackson was and is without the wherewithal for allowing these children to leave the state. Mr. Jackson is not in any way attempting to thwart Miss Barrett. He's not trying to keep these kids here. He wants these children to stay here. Mr. Jackson has always and will always abide by the rule of law. He understands it. He simply wants his children close at hand. One final comment, Your Honor, or Your Justice, is they live in a very comfortable manner. And I don't mean in terms of wealth. What I mean is the children are in schools they enjoy. When I asked the mother, well, you're comfortable now, aren't you? She said, yes. You have a roof over your head. Your husband's earning an income. The children, they're in school. They have friends in school. They have a community here. They've been here for a number of years, at least four or five years, because I know one time Rachel lived back where she wants to move. So my final point being that these children are ensconced in a wonderful community. They have a great relationship with their father. They have children around the house, children in the neighborhood, and children in the school. To upset this apple cart, so to speak, I think would be very, very much against the best interests of these minor children. So I'm asking, Your Justices, that you affirm the trial court and allow the trial court's decision to stand. Thank you very much for your time. Thank you, counsel. Mr. McDonald, any rebuttal? Briefly. Your Honors, I submit that the record, reading the record as a whole, does not sustain the arguments made by counsel. The totality of the record shows that this was her hometown. This is where the father and the mother had actually started their marriage, was in New Castle, Pennsylvania. So to say that she was unprepared or didn't know the area is unsustainable by the record. And this argument with respect to the automobile and not having access to an automobile, the father, the testimony was very clear that he had used that automobile of his aunt's to take the children to Chicago. He had taken the children in that car to St. Louis. He had taken the children in that car on a holiday to Six Flags in Missouri. So he's merely being asked to go a little bit further, the halfway point between New Castle and Clinton, Illinois. When I was growing up, when I displeased my mother, my dad used to say to me, do what your mother says because if mom's happy, the family's happy. And I think that that's what this case comes down to. The mother, by putting Rachel in a position where she is comfortable increases the quality of life for these children. And that's the import of the Parr decision. And secondly, we cannot give the non-custodial father a veto, making it a higher standard of proof to prove that it's in the best interest of the children. And that's what the Parr decision says. You cannot do that. And that's what I believe Judge Fenson did in this case. He granted the non-custodial father a veto. That was legal error, and it should be reversed. Thank you. Thank you, Mr. Hoffman. We will take this matter under advisement and be in recess until the next call to court.